**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **KAREN CLINKSCALES**    _____ | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 06-3919** |
| | : | |
| **THE CHILDREN'S HOSPITAL OF** | : | |
| **PHILADELPHIA, <u>et al.</u>** | : | |

<u>**MEMORANDUM AND ORDER**</u>

**Kauffman, J.**                                                          **November    9,  2007**


Now before the Court is Defendants' Motion to Dismiss Plaintiff's Second Amended

Complaint.  For the reasons discussed below, the Motion will be granted in part and denied in

part, and Plaintiff, who is appearing *pro se*, shall have 20 days in which to file a Third Amended

Complaint.


**I.  BACKGROUND**

This case arises from the dismissal of Plaintiff Karen Clinkscales ("Plaintiff") as an

employee of the Children's Hospital of Philadelphia.  Accepting the allegations in the Second

Amended Complaint as true, the relevant facts are as follows.  In July 2003, Defendant

Children's Hospital of Philadelphia ("CHOP") hired Plaintiff as an Intellectual Property

Specialist.  Second Am. Compl. ¶ 10.  Plaintiff confirmed in writing with Defendants Denise

Outlaw ("Outlaw"), a human resources manager, and Kurt Schwinghammer

("Schwinghammer"), a hospital director, the job duties she was expected to perform.  <u>Id.</u> ¶ 11.

Schwinghammer advised Plaintiff that she would have the option of advancing to the position of

Licensing Associate or any other position within the department.  Id. ¶¶ 12-13.  Schwinghammer

also told her that as an Intellectual Property Specialist, she would be responsible for managing

the day-to-day operations of the department, including management of the departmental budget.

Id. ¶¶ 12-14.  Based on the representations made by Outlaw and Schwinghammer, Plaintiff left

her employment at Emory University and turned down another pending offer of employment.  Id.

¶ 17.  Plaintiff was the first and only African American employee hired to work full-time in her

department.  Id. ¶ 20.

Shortly after beginning work in September 2003, "it became apparent to Plaintiff that her

responsibilities had changed significantly from how they were communicated by the Defendants

during her interview process."  Id. ¶ 21.  She was not permitted "to perform her job

responsibilities independently" and faced hostility from Schwinghammer whenever she

attempted to perform the duties as she understood them.  Id. ¶ 22.  According to Plaintiff,

Schwinghammer did not place similar restrictions on or demonstrate a similar level of hostility

toward white coworkers.  Id. ¶¶ 23, 26.  When she sent an e-mail to Schwinghammer asking him

to clarify her job responsibilities, she was told "that her duties were virtually the same as those of

her substantially junior white employee, McSorley."  Id. ¶¶ 38, 42.  After Plaintiff requested

information necessary to prepare the departmental budget, Schwinghammer told her that he

would handle the budget.  Id. ¶ 44.  Plaintiff later discovered that Schwinghammer reassigned the

budget along with some of her other duties to McSorley.  Id. ¶ 50.

Plaintiff also alleges that Schwinghammer monitored her e-mails and phone calls but did

not subject white employees to the same scrutiny.  Id. ¶¶ 82-83.  Schwinghammer excluded her

from meetings that white coworkers were allowed to attend and copied McSorley on Plaintiff's e-

mails in order to give others the impression that McSorley was responsible for Plaintiff's duties. Id. ¶¶ 65-66.  Plaintiff further asserts that despite his earlier representations concerning the Licensing Associate position, Schwinghammer told her that she was not qualified to become a Licensing Associate but instead permitted a white employee with less education and experience to handle the duties of the position.  Id. ¶¶ 71, 75.  Schwinghammer also "required Plaintiff to meet standards for advancement opportunities that were higher than those of her white co-workers" and would humiliate her by sending her accusatory, hostile e-mails with copies to McSorley.  Id. ¶¶ 84, 86.

In November 2003, Plaintiff complained of discriminatory treatment to Defendant Justina Green ("Green"), CHOP's Human Resources Director.  Id. ¶ 87.  Green suggested that Plaintiff apply for another position in the hospital.  Id. ¶ 89.  After Plaintiff made further complaints in 2004, Green told Plaintiff that Schwinghammer's behavior was acceptable.  Id. ¶ 90.  Green at no time attempted to curtail Schwinghammer's behavior.  Id. ¶ 91.

In August 2004, Defendant Nelcine Dudley ("Dudley"), a human resources employee, met with Plaintiff to discuss Schwinghammer's behavior.  Id. ¶ 109.  At this meeting, Plaintiff advised Dudley "that the hostile working environment created by Schwinghammer had become detrimental to her health and that she could no longer work in such an environment."  Id. ¶ 110. Dudley arranged a meeting with Plaintiff and Schwinghammer to discuss "clarification of roles and responsibilities," but not to address Plaintiff's harassment claims.  Id. ¶ 118.  During this meeting, Schwinghammer remained hostile, asserted that Plaintiff performed poorly during her

probation period, and gave her specific instructions on how to handle "Office Actions."[1]  <u>Id.</u> ¶¶ 123, 128, 129.

Approximately one week after this meeting, on August 18, 2004, Outlaw called Plaintiff into a meeting with Dudley and Schwinghammer.  <u>Id.</u> ¶¶ 135-36.  At this meeting, Schwinghammer again questioned Plaintiff's competence and indicated that she did not handle the "Office Actions" as he had instructed at the previous meeting.  <u>Id.</u> ¶¶ 138-39.  Plaintiff advised Outlaw that she was working in a hostile environment which was keeping her from performing her duties.  <u>Id.</u> ¶ 148.  Outlaw stated that she would conduct an investigation of Plaintiff's disputes with Schwinghammer and hold a subsequent meeting, but no meeting was ever held.  <u>Id.</u> ¶¶ 154-55.  Neither Dudley nor Outlaw would agree to follow up with Plaintiff to discuss her concerns.  <u>Id.</u> ¶ 158.

On August 25, 2004, Schwinghammer sent Plaintiff a disciplinary writeup for her failure to follow his instructions, including his instructions on "Office Actions."  <u>Id.</u> ¶ 159.  Plaintiff refused to sign the document and explained that she wanted to speak with someone about the writeup.  <u>Id.</u> ¶ 160.  When she was not contacted about the writeup, Plaintiff called Green and explained that Schwinghammer had written her up in direct retaliation for her complaints of discriminatory treatment.  <u>Id.</u> ¶ 164.  Green declined to get involved and instructed Plaintiff to speak with Outlaw.  <u>Id.</u> ¶ 165.  Thereafter, Plaintiff spoke with Outlaw, who indicated that she was aware of the writeup but took no further action.  <u>Id.</u> ¶¶ 167-69.

Due to her work environment and related stress, Plaintiff was advised by her doctor to

---

[1]     Plaintiff does not explain what "Office Actions" are, but it appears that they are internal office memoranda that she was required to distribute to her co-workers.

take time off in order to recover from a stress-induced physical disability and related ailments. Id. ¶ 174.  At no time during her medical leave did Schwinghammer "contact Plaintiff to see if he could assist her with her work." Id. ¶ 175.  In contrast, Schwinghammer contacted a white employee during her medical leave and arranged to have her work completed during her absence, thus affording the white employee preferential treatment.  Id. ¶¶ 176-80.

Because the hostile working environment continued, Plaintiff took a second medical leave approximately one week after returning to work.  Id. ¶¶ 182-83.  She requested intermittent medical leave, "meaning that she would be able to take leave as the need would arise." Id. ¶ 184. Two days after Plaintiff was out on intermittent medical leave, a consultant began taking over her job responsibilities. Id. ¶ 185.  In October 2004, while on medical leave, Plaintiff again contacted human resources officials at CHOP about her discrimination complaints, and when they failed to investigate, she filed a complaint with the Pennsylvania Human Relations Commission (PHRC). Id. ¶¶ 189-193.  A copy of the complaint was also filed with the United States Equal Employment Opportunity Commission. Id. ¶ 193.

While Plaintiff was out on medical leave, she received a letter from CHOP notifying her that if she did not return to work in December 2004, she would be placed on layoff status. Id. ¶ 197.  She replied in writing, advising CHOP that her doctors considered her medically disabled and unable to work, but that she looked forward to returning when able to do so. Id. ¶ 198. Plaintiff explains that this letter to CHOP was a request for CHOP to accommodate her disability. Id. ¶ 199.  Instead of accommodating Plaintiff, CHOP sent her a letter in January 2005 stating that her employment would be permanently terminated if her position became filled. Id. ¶

208.[2]  Plaintiff claims that at the time this letter was sent, Schwinghammer already had replaced

her with a consultant.  Id. ¶¶ 207, 210.

After receiving the January 2005 letter, Plaintiff's medical condition worsened and she

was unable to return to work.  Id. ¶ 216.  She asserts that CHOP has a policy that affords all

employees the opportunity to relocate to another department if his or her position is filled while

he or she is out on medical leave and that CHOP refused to afford her this opportunity.  Id. ¶ 211.

Plaintiff explains that CHOP terminated her employment in direct retaliation for her filing of a

complaint with the PHRC.  Id. ¶¶ 219-20.

Plaintiff filed her Complaint in this Court on September 1, 2006, an Amended Complaint

on September 29, 2006, and a Second Amended Complaint on January 12, 2007.  The Second

Amended Complaint contains a total of 13 counts:[3] racial discrimination in violation of Title VII

of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. (Count I); hostile work environment

in violation of Title VII (Count II); intentional racial discrimination in violation of 42 U.S.C. §

1981 (Count III); retaliation in violation of Title VII (Count IV); disability discrimination in

violation of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101 et seq. (Count V);

racial discrimination in violation of the Pennsylvania Human Relations Act (PHRA), 43 Pa.

Cons. Stat. §§ 955 et seq. (Count VI); retaliation in violation of the PHRA (Count VII); aiding

and abetting against Green, Dudley, Outlaw, and CHOP in violation of the PHRA (Count VIII); a

---

[2]     Plaintiff also claims that CHOP sent her a letter in January 2005 "confirming the
fact that CHOP was aware that Plaintiff had a verifiable disability."  Second Am. Compl. ¶ 200.
The Second Amended Complaint does not specify if this January 2005 letter was the same as the
letter explaining that she would be terminated if her position was filled.

[3]     Unless otherwise noted, the claims in each of the 13 counts are asserted against all
Defendants.

state law fraud claim against CHOP, Outlaw, and Schwinghammer (Count IX); a breach of

contract claim against CHOP, Outlaw, and Schwinghammer (Count X); a negligent

misrepresentation claim against CHOP, Outlaw, and Schwinghammer (Count XI); a state law

personal injury claim (Count XII); and disability discrimination in violation of the PHRA (Count

XIII).  Defendants CHOP, Schwinghammer, Green, Dudley, and Outlaw filed the instant Motion

to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).


## II.  LEGAL STANDARD

When considering a motion to dismiss pursuant to Federal Rule of Civil Procedure

12(b)(6), this Court is required "to accept as true all allegations in the complaint and all

reasonable inferences that can be drawn therefrom, and view them in the light most favorable to

the non-moving party."  Rocks v. City of Philadelphia, 868 F.2d 644, 645 (3d Cir. 1989).  In

deciding a 12(b)(6) motion, "a court looks only to the facts alleged in the complaint and its

attachments without reference to other parts of the record."  Jordan v. Fox, Rothschild, O'Brien

& Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).  "To survive a motion to dismiss, a civil plaintiff

must allege facts that 'raise a right to relief above the speculative level on the assumption that the

allegations in the complaint are true (even if doubtful in fact).'"  Victaulic Co. v. Tieman, 2007

U.S. App. LEXIS 20077, at *15 (3d Cir. Aug. 23, 2007) (citations omitted in original) (quoting

Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007)).  Because Plaintiff is appearing pro

se, the Court will construe her Second Amended Complaint liberally and hold it "to less stringent

standards than formal pleadings drafted by lawyers."  Haines v. Kerner, 404 U.S. 519, 520

(1972).

## III.  ANALYSIS

### A.  Racial Discrimination (Counts I and VI)

Title VII prohibits employment discrimination on the basis of race, color, religion, sex, or national origin.  42 U.S.C. § 2000e-2.  The PHRA contains a similar prohibition and is construed consistently with Title VII.  See 43 Pa. Cons. Stat. § 955(a); Gomez v. Allegheny Health Servs., Inc., 71 F.3d 1079, 1083-84 (3d Cir. 1995).  In order to establish a *prima facie* case of race discrimination, a plaintiff "must demonstrate that (1) she is a member of a protected class; (2) she was qualified for the position she held or sought; (3) she suffered an adverse employment action; and (4) similarly situated persons who are not members of the protected class were treated more favorably, or that the circumstances of her termination give rise to an inference of discrimination."  Taylor v. Brandywine Sch. Dist., 202 F. App'x 570, 575 (3d Cir. 2006) (citing Jones v. Sch. Dist. of Phila., 198 F.3d 403, 410-11 (3d Cir. 1999)).  According to Plaintiff's Second Amended Complaint, Defendants discriminated against her by, *inter alia*, terminating her employment, treating her differently from the manner in which they treated her white coworkers, and subjecting her to requirements not imposed on her white coworkers.  Second Am. Compl. ¶ 224.

Defendants argue that Plaintiff has failed to allege that she suffered "an adverse employment" action and that she therefore cannot establish a *prima facie* case of racial discrimination.  However, the Supreme Court has rejected the argument that an employment discrimination plaintiff must plead all elements of a *prima facie* case to survive a motion to dismiss because the *prima facie* case is an evidentiary requirement, not a pleading requirement.

See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 515 (2002).  Rather, the appropriate standard is governed by Federal Rule of Civil Procedure 8(a), which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."  This requirement is met if the statement "give[s] the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."  Swierkiewicz, 534 U.S. at 512 (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

Viewed in light of Rule 8 requirements, Plaintiff's Second Amended Complaint gives Defendants fair notice of the nature of her claims.  Plaintiff alleges that she was terminated from her employment based on race discrimination, see Second Am. Compl. ¶ 221, and that the job duties she was promised in writing were reassigned to less-qualified white employees, see id. ¶¶ 11, 47, 49-51, 71-77.  These claims, together with the numerous instances of racial discrimination and hostility described in the Second Amended Complaint, clearly meet the liberal pleading requirements of Rule 8.  However, Plaintiff's claims against all individual Defendants must be dismissed because neither Title VII nor the PHRA permit individual liability for racial discrimination.  See, e.g., Sheridan v. E.I. Dupont de Nemours & Co., 100 F.3d 1061, 1078 (3d Cir. 1996) (holding that Title VII does not provide for individual liability); Dici v. Pennsylvania, 91 F.3d 542, 552 (3d Cir. 1996) (holding that 43 Pa. Cons. Stat. § 955(a) does not provide for individual liability).  Accordingly, Counts I and VI will be dismissed with respect to Defendants Schwinghammer, Green, Dudley, and Outlaw.

**B.  Hostile Work Environment (Count II)**

To establish a *prima facie* case of a hostile work environment under Title VII, a plaintiff must show: (1) that she suffered intentional discrimination because of her membership in a

protected class; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected her; (4) the discrimination would have detrimentally affected a reasonable person in the same position; and (5) the existence of *respondeat superior* liability.  West v. Phila. Elec. Co., 45 F.3d 744, 753 (3d Cir. 1995) (citing Andrews v. City of Philadelphia, 895 F.2d 1469, 1482 (3d Cir. 1990)).  "Workplace conduct is not measured in isolation; instead, 'whether an environment is sufficiently hostile or abusive' must be judged 'by looking at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'"  Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 270-71 (2001) (internal quotation marks omitted) (quoting Faragher v. City of Boca Raton, 524 U.S. 775, 787-88 (1998)).  Plaintiff contends that Defendants violated Title VII by creating a hostile work environment, "causing Plaintiff to live in constant fear of losing her job if she did not concede to their discriminatory actions."  Second Am. Compl. ¶¶ 227-28.

Defendants argue that Plaintiff's allegations fail to state a claim for hostile work environment.  They correctly point out that Title VII is not "a general civility code" for the workplace, Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81 (1998), and cite a number of cases in support of the basic proposition that "isolated or single incidents of harassment are insufficient to constitute a hostile work environment."  Rush v. Scott Specialty Gases, Inc., 113 F.3d 476, 482 (3d Cir. 1997) (quoting West, 45 F.3d at 755).  However, Plaintiff alleges more than isolated incidents in support of her claim.  She claims, *inter alia*, that despite written confirmation of her job duties, those duties were reassigned to white employees, see Second Am. Compl. ¶¶ 42, 50, 96; that she was held to higher standards of conduct than white

employees, see id. ¶¶ 78, 84; that she was humiliated by Schwinghammer in emails copied to a fellow employee, see id. ¶ 86; that Schwinghammer monitored her phone calls and e-mails but did not monitor the communications of white employees, see id. ¶¶ 82-83; that Schwinghammer disciplined her in writing for complaining about the hostile work environment, see id. ¶ 173; that a white employee was given preferential treatment when that employee took medical leave, see id. ¶¶ 178-80; and that CHOP and human resources officials were aware of the alleged hostile working environment but failed to remedy the problem, see id. ¶¶ 170, 205. The Court finds that Plaintiff has sufficiently put Defendants on notice of the basis for her hostile work environment claim against CHOP, thus satisfying Rule 8 standards. As explained above, however, Title VII does not provide for individual liability, and Count II will be dismissed with respect to Schwinghammer, Green, Dudley, and Outlaw.

### C.  Intentional Race Discrimination (Count III)

Plaintiff's 42 U.S.C. § 1981 claim is analyzed under the same framework as her Title VII claims, see, e.g., Tucker v. Merck & Co., 131 F. App'x 852, 854-55 (3d Cir. 2005), and for the reasons discussed in Part III.A, supra, Plaintiff's allegations that CHOP reassigned her job duties and discharged her are sufficient to meet Rule 8 requirements.

In contrast to Title VII, individual defendants may be held liable under 42 U.S.C. § 1981 if they are personally involved in acts of discrimination.  See, e.g., Al-Khazraji v. St. Francis Coll., 784 F.2d 505, 518 (3d Cir. 1986) ("If individuals are personally involved in the discrimination against the Appellant, and if they intentionally caused the College to infringe on Appellant's Section 1981 rights, or if they authorized, directed, or participated in the alleged discriminatory conduct, they may be held liable.").  Defendants argue that with respect to Green,

Dudley, and Outlaw, Count III must be dismissed because the Second Amended Complaint fails to allege an "affirmative link to causally connect the actor[s] with the discriminatory action." Johnson v. Res. for Human Dev., Inc., 843 F. Supp. 974, 978 (E.D. Pa. 1994) (citing Allen v. Denver Pub. Sch. Bd., 928 F.2d 978, 983 (10th Cir. 1991)).  Given Plaintiff's request for leave to amend her pleadings in order to clarify each Defendant's role in the alleged discriminatory conduct, the Court will grant her leave to amend this claim within twenty days if she can responsibly do so.  See Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004).  If Plaintiff fails to amend the claim within twenty days, it will be dismissed with respect to Green, Dudley, and Outlaw.

### D.  Retaliation (Counts IV and VII)

Title VII also prohibits any form of retaliation based on an employee's opposition to unlawful discriminatory practices.  42 U.S.C. § 2000e-3(a).  The PHRA similarly prohibits retaliation when an employee opposes practices prohibited under the statute.  See 43 Pa. Cons. Stat. § 955(d).  To establish a *prima facie* retaliation case, an employee must show that "(1) the employee engaged in a protected employee activity; (2) the employer took an adverse employment action after or contemporaneous with the employee's protected activity; and (3) a causal link exists between the employee's protected activity and the employer's adverse action." Farrell v. Planters Lifesavers Co., 206 F.3d 271, 279 (3d Cir. 2000).  Defendants argue that because Plaintiff has failed to allege that she suffered "an adverse employment action," she has failed to assert a *prima facie* case.

As with a racial discrimination claim, a retaliation claim sufficient to withstand a 12(b)(6) motion need not set forth all facts necessary to establish a *prima facie* case.  See, e.g., Gavura v.

Pa. State House of Representatives, 55 F. App'x 60, 64-65 (3d Cir. 2002) (explaining that to survive a motion to dismiss, a plaintiff need not establish all elements of a *prima facie* retaliation case but must instead "plead facts sufficient to give [the defendants] fair notice of the basis for her retaliation claim"). Plaintiff has given Defendant CHOP fair notice: After she filed her PHRC complaint in October 2004, CHOP, at the behest of Schwinghammer, terminated her employment in December 2004. See Second Am. Compl. ¶¶ 219-20, 241. This allegation, if proven, is "materially adverse" in that it likely would dissuade "a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry. v. White, 126 S. Ct. 2405, 2415 (2006) (quoting Rochon v. Gonzales, 438 F.3d 1211, 1219 (D.C. Cir. 2006)). Therefore, Plaintiff has satisfied her burden with respect to the retaliation claim against CHOP.

As discussed above, however, Title VII does not provide for individual liability. Accordingly, Count IV will be dismissed as to Schwinghammer, Green, Dudley, and Outlaw. In cases of alleged retaliation, the PHRA does permit individual liability. See 43 Pa. Cons. Stat. § 955(d) (explaining that "any person" may be liable for retaliation); Wein v. Sun Co., 936 F. Supp. 282, 283 (E.D. Pa. 1996) ("[U]nder the plain meaning of the language of [section 955(d)] . . . an individual . . . may be held personally accountable for retaliatory discrimination as well."). With respect to Schwinghammer, Plaintiff alleges that he issued a disciplinary writeup after she complained of discrimination and that he decided to terminate her employment after she filed the PHRC complaint. See Second Am. Compl. ¶¶ 173, 206-07. As above, these allegations are sufficient to give fair notice of the basis of the claim. With respect to the remaining individual Defendants, however, Plaintiff's claims are more vague, and the Second Amended Complaint

does not clearly articulate what each Defendant allegedly did to retaliate against her.[4]  Because

Plaintiff has requested leave to amend her pleadings in order to clarify the roles of the individual

Defendants for purposes of this claim, the Court will grant her leave to amend within twenty days

if she can responsibly do so.  If Plaintiff fails to amend the claim within twenty days, it will be

dismissed with respect to Green, Dudley, and Outlaw.

### E.  Disability Discrimination (Counts V and XIII)

The Americans with Disabilities Act (ADA) prohibits employers from discharging "a

qualified individual with a disability" because of that disability.  42 U.S.C. § 12112(a).  The

PHRA contains a similar prohibition against the discharge of employees with disabilities, and it

is construed in accordance with the ADA.  See 43 Pa. Cons. Stat. § 955(a); Kelly v. Drexel

Univ., 94 F.3d 102, 105 (3d Cir. 1996).  To establish a *prima facie* case of disability

discrimination, a plaintiff must demonstrate that "(1) he is a disabled person within the meaning

of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or

without reasonable accommodations by the employer; and (3) he has suffered an otherwise

adverse employment decision as a result of discrimination."  Shaner v. Synthes (USA), 204 F.3d

494, 500 (3d Cir. 2000) (quoting Gaul v. Lucent Techs., Inc., 134 F.3d 576, 580 (3d Cir. 1998)).

To withstand a motion to dismiss, "[c]omplaints 'need not plead law or match facts to

---

[4]       For example, Plaintiff asserts that Dudley held a meeting in response to her
complaints about a hostile work environment.  Plaintiff claims that because the meeting
addressed her job responsibilities rather than her hostile work environment claims, Dudley's
decision to hold and participate in the meeting was retaliatory.  It is unclear whether she is
asserting Dudley's decision to hold a meeting was retaliatory or whether Dudley's focus on
Plaintiff's job description was retaliatory.  It is also unclear whether either allegation, or any
other allegation against the remaining Defendants, can rise above the level of "normally petty
slights, minor annoyances, and simple lack of good manners" that are not considered retaliatory.
Burlington N. & Santa Fe Ry., 126 S. Ct. at 2415.

every element of a legal theory.'"  Weston v. Pennsylvania, 251 F.3d 420, 429 (3d Cir. 2001)

(quoting Krieger v. Fadely, 211 F.3d 134, 136 (D.C. Cir. 2000)).  Plaintiff alleges that she had a

disability brought on by stress at work, see Second Am. Compl. ¶¶ 174, 194; that Defendants

acknowledged this disability in writing, see id. ¶ 200; that she requested a period of intermittent

medical leave, "meaning that she would be able to take leave as the need would arise," to

accommodate her disability, id. ¶ 184; and that rather than discuss possible accommodations,

CHOP terminated her employment in violation of its own medical leave policy, see id. ¶¶ 201-

02, 211.  Keeping in mind the liberal pleading requirements the Supreme Court has mandated for

employment discrimination claims, see Swierkiewicz, 534 U.S. at 512, the Court finds that

Plaintiff has made sufficient allegations to afford Defendants fair notice of the basis of her claim.

        Defendants are correct that individuals cannot be held liable for disability discrimination

under either the ADA or the PHRA.  See, e.g., Fullman v. Phila. Int'l Airport, 49 F. Supp. 2d

434, 441 (E.D. Pa. 1999) ("[D]istrict courts in the Third Circuit, faced with the issue of whether

the ADA permits individual liability, have held that individual employees cannot be held liable

under the ADA." (listing cases)); see also Dici, 91 F.3d at 552.  Accordingly, Counts V and XIII

will be dismissed as to Schwinghammer, Green, Dudley, and Outlaw.

        **F.  Aiding and Abetting (Count VIII)**

        While, as discussed above, Title VII does not permit individual liability, the PHRA does

provide for individual liability in cases where a person aids and abets acts of discrimination.  See

43 Pa. Cons. Stat. § 955(e).  Plaintiff alleges that Defendants Green, Dudley, Outlaw, and CHOP

aided and abetted the conduct alleged by failing to intervene or prevent Schwinghammer's

discriminatory behavior.  Second Am. Compl. ¶ 170.  Defendants argue that section 955(e)

applies only to supervisory employees and that because Outlaw, Green, and Dudley did not supervise Plaintiff, the aiding and abetting claim against them should be dismissed.  As Defendants note, the Third Circuit has distinguished between coworkers, who cannot be held liable under section 955(e), and supervisors, who can be held liable under that section.  <u>Dici v. Pennsylvania</u>, 91 F.3d at 552-53; <u>see also</u> <u>Destefano v. Henry Michell Co.</u>, 2000 U.S. Dist. LEXIS 6073, at *7 (E.D. Pa. Apr. 13, 2000) ("Courts have distinguished between nonsupervisory and supervisory employees, and imposed liability only on the latter, on the theory that supervisory employees can share the discriminatory intent and purpose of the employer.").

Plaintiff's claim is based on the principle that "an individual supervisory employee can be held liable under an aiding and abetting/accomplice liability theory pursuant to § 955(e) for . . . failure to take action to prevent further discrimination by an employee under supervision." <u>Davis v. Levy, Angstreich, Finney, Baldante, Rubenstein & Coren, P.C.</u>, 20 F. Supp. 2d 885, 887 (E.D. Pa. 1998).  Plaintiff asserts that "all of the individual defendants are either actual or implied supervisors because of the nature of the positions they held with CHOP."  Pl.'s Second Am. Resp. to Def.'s Mot. to Dismiss 9.  Indeed, throughout the Second Amended Complaint, Plaintiff avers that she repeatedly told Green, Dudley, and Outlaw about Schwinghammer's conduct and that they did nothing to stop his behavior.  <u>See</u> Second Am. Compl. ¶¶ 170-73.  These allegations, when read generously, assert that Green, Dudley, and Outlaw, as human resources officials, had the authority to stop the discriminatory conduct but failed to do so, thus aiding and abetting the discrimination in violation of section 955(e).  <u>See, e.g.,</u> <u>Thorpe v. Reading Hosp.</u>, 2006 U.S. Dist. LEXIS 80206, at *22 (E.D. Pa. Nov. 1, 2006) (explaining that liability under section 955(e) is permitted where "the plaintiff alleges that the party knew or should have known

-16-

about the discrimination and refused to take remedial action" (citing <u>Dici</u>, 91 F.3d at 553)). Whether or not Plaintiff will be able to prove that Green, Dudley, and Outlaw were supervisory employees, her allegations have met the liberal pleading requirements of Rule 8.  Accordingly, the Court will not dismiss Count VIII.

   **G.  Fraud (Count IX)**

   In order to establish a fraud claim under Pennsylvania law, a plaintiff must establish the following elements: "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance." <u>Youndt v. First Nat'l Bank</u>, 868 A.2d 539, 545 (Pa. Super. Ct. 2005) (citing <u>Gibbs v. Ernst</u>, 647 A.2d 882, 889 (Pa. 1994)).  Plaintiff alleges that Defendants CHOP, Outlaw, and Schwinghammer intentionally misled her into believing her job duties would conform to those contained in her written job description when they had no intention of honoring that description.  Second Am. Compl. ¶¶ 259-61.  Plaintiff also claims that CHOP intentionally misled Plaintiff into believing that she would have the opportunity to advance into the position of "Licensing Associate or any other position in her department." <u>Id.</u> ¶ 260.

   As Defendants argue, the fraud claim is time-barred even if Plaintiff invokes the doctrine of fraudulent concealment.  Plaintiff claims that she discovered the fraud about her job duties within several weeks of her September 2, 2003 start date.  <u>See</u> Second Am. Compl. ¶¶ 38, 42. Because the Complaint was filed on September 1, 2006, it is untimely under the two-year limitations period imposed by 42 Pa. Cons. Stat. § 5524(7).  Plaintiff attempts to invoke the

doctrine of fraudulent concealment, which tolls the statute of limitations based on "an affirmative and independent act of concealment that would divert or mislead a plaintiff about the underlying cause of action." Sheet Metal Workers Int'l Ass'n, Local 19 v. 2300 Group, Inc., 949 F.2d 1274, 1280 (3d Cir. 1991) (citing Gee v. CBS, Inc., 471 F. Supp. 600, 624 (E.D. Pa. 1979)). She explains that Schwinghammer's representation that she would be permitted to handle the budget starting in July 2004 concealed the fraud, thus causing her to forego pursuit of her claim. Yet, she also claims that in July 2004, Schwinghammer told her that a white employee would be in charge of the budget, thus ending the concealment. See Second Am. Compl. ¶¶ 95-96. Assuming that the statute of limitations was tolled until July 2004 because of concealment, Plaintiff's claim still is untimely because she did not file her Complaint until September 1, 2006, over two years after she discovered the alleged fraud. Accordingly, the Court will dismiss Count IX in its entirety.[5]

### H.  Breach of Contract/Detrimental Reliance (Count X)

Plaintiff alleges that Defendants CHOP, Outlaw, and Schwinghammer breached her employment contract by terminating her. See Second Am. Compl. ¶¶ 265-66. Defendants argue that under Pennsylvania law, employment is at-will, and as such, "it is presumed that either party may end an employment relationship at any time, for any or no cause." Murray v. Commercial Union Ins. Co., 782 F.2d 432, 435 (3d Cir. 1986). This at-will presumption also precludes relief for claims of detrimental reliance or promissory estoppel in the employment context. See, e.g., Walden v. St. Gobain Corp., 323 F. Supp. 2d 637, 646 & n.33 (E.D. Pa. 2004) ("It is firmly

---

[5]     Given the statute of limitations bar to her fraud claim, the Court finds that Plaintiff's proposed amendments would be futile. The Court therefore will not grant leave to amend this claim.

established that Pennsylvania courts do not recognize a cause of action for promissory estoppel in the context of at-will employment." (citing cases)).  "In order for the presumption of employment-at-will to be overcome, there must be either an express contract between the parties, or an implied in-fact contract plus additional consideration passing from the employee to the employer from which the court can infer the parties intended to overcome the at-will presumption."  Raines v. Haverford Coll., 849 F. Supp. 1009, 1012 (E.D. Pa. 1994) (citing Ruzicki v. Catholic Cemeteries Ass'n, 610 A.2d 495, 497 (Pa. Super. Ct. 1992)).

In her response to the Motion to Dismiss, Plaintiff contends that she had an implied contract and that the additional consideration she provided was similar to that in Cashdollar v. Mercy Hospital of Pittsburgh, 595 A.2d 70, 73-74 (Pa. Sup. Ct. 1991), where a plaintiff's decision to uproot his pregnant wife and young son, sell his home, and move to a different city (only to be terminated 16 working days later) was sufficient to establish additional consideration and create an implied employment contract.  Plaintiff's only factual contention in the Second Amended Complaint, however, is that she gave up her previous employment and turned down another employment offer to begin work at CHOP.  See Second Am. Compl. ¶ 17.  Numerous courts have found that such a contention, standing alone, is insufficient to establish the "additional consideration" necessary to overcome the at-will presumption.  See, e.g., Marshall v. Dunwoody Vill., 782 F. Supp. 1034, 1041-42 (E.D. Pa. 1992) ("Simply because [the plaintiff] left his last employment to take a new job with Dunwoody does not equate to him conferring a substantial benefit upon Dunwoody, nor does it equate to him having sustained a substantial detriment.  He freely made a career choice.  [The plaintiff's] decision to leave his personal real estate career cannot then be viewed as 'substantial additional consideration' made to Dunwoody

-19-

in exchange for employment."); <u>Schleig v. Commc'ns Satellite Corp.</u>, 698 F. Supp. 1241, 1247-48 (M.D. Pa. 1988) ("[T]he fact that Schleig gave up other employment opportunities and purchased a house is not enough to make him anything other than a typical at-will employee."). However, given Plaintiff's response to the Motion to Dismiss, in which she alleges facts not addressed in the Second Amended Complaint and requests leave to amend, the Court will permit her to amend Count X within twenty days if she can responsibly do so.  If Plaintiff fails to amend the claim within twenty days, it will be dismissed in its entirety.

### I. Negligent Misrepresentation (Count XI)

As an apparent alternative to her fraud claim, Plaintiff alleges that the actions of Defendants CHOP, Outlaw, and Schwinghammer, presumably with respect to representations they made when discussing Plaintiff's job description, constitute negligent misrepresentation. <u>See</u> Second Am. Compl. ¶ 269.  "Negligent misrepresentation requires proof of: (1) a misrepresentation of a material fact; (2) made under circumstances in which the misrepresenter ought to have known its falsity; (3) with an intent to induce another to act on it; and; (4) which results in injury to a party acting in justifiable reliance on the misrepresentation."  <u>Bortz v. Noon</u>, 729 A.2d 555, 561 (Pa. 1999).  However, as Defendants argue, even if she could establish the four elements of negligent misrepresentation, her Second Amended Complaint reveals that she became aware of the misrepresentation within weeks of her hire in September 2003.  <u>See</u> Second Am. Compl. ¶¶ 38, 42.  Because the statute of limitations for a negligent misrepresentation claim is two years, <u>see</u> 42 Pa. Cons. Stat. § 5524(7), this claim is time-barred.  Accordingly, Count XI

-20-

will be dismissed in its entirety.[6]

### J.  Personal Injury (Count XII)

Plaintiff claims that due to the hostile work environment and Schwinghammer's

harassing critiques, she sustained personal injury and incurred a stress-induced disability.  See

Second Am. Compl. ¶¶ 174, 183, 272.[7]  Defendants argue, and the Court agrees, that Plaintiff's

claim against CHOP is precluded by Pennsylvania's Worker Compensation Act (WCA), which

"provides the sole remedy 'for injuries allegedly sustained during the course of employment.'"

Matczak v. Frankford Candy & Chocolate Co., 136 F.3d 933, 940 (3d Cir. 1997) (quoting Dugan

v. Bell Tel. of Pa., 876 F. Supp. 713, 723 (W.D. Pa. 1994)); see also 77 Pa. Cons. Stat. § 481(a).[8]

---

[6]      Plaintiff has not responded to the Motion to Dismiss on this claim, nor has she sought leave to amend it.  Because the limitations period for this claim has expired, any amendment would be futile.

[7]      Because Plaintiff does not allege that any physical actions of Defendants led to her injury, it appears that her claim is for intentional infliction of emotional distress (IIED).  For the purposes of this Motion, the Court will presume that the claim is for IIED.

[8]      Nor would the so-called "third-party attack" exception apply to Plaintiff's claim. This exception to WCA exclusivity applies to "injuries caused by the intentional conduct of third parties for reasons personal to the tortfeasor and not directed against him as an employee or because of his employment."  Durham Life Ins. Co. v. Evans, 166 F.3d 139, 160 (3d Cir. 1999). The "critical inquiry . . . is whether the attack was motivated by personal reasons, as opposed to generalized contempt or hatred, and was sufficiently unrelated to the work situation so as not to arise out of the employment relationship."  Fugarino v. Univ. Servs., 123 F. Supp. 2d 838, 844 (E.D. Pa. 2000).  In the instant case, Plaintiff's claims all stem from workplace-related conduct based on race and disability bias rather than any specific personal animus.  Accordingly, this exception is inapplicable to Plaintiff's claim against CHOP.  See, e.g., DeWyer v. Temple Univ., 2001 U.S. Dist. LEXIS 1141, at *14 (E.D. Pa. Feb. 6, 2001) ("In this case, the discrimination Plaintiff alleges manifested in behavior displayed only at the workplace—reprimands, suspensions, criticisms, and requiring Plaintiff to park other than where she desired—and therefore is entirely related to the work situation and arose solely from the employment relationship.  Consequently, the WCA exception would not apply.").

Therefore, the Court will dismiss Count XII as to CHOP.

The WCA exclusivity provision applies only to employer liability, not to employee liability.  Co-employees may still be held liable for intentional conduct that causes injury to another employee.  See 77 Pa. Cons. Stat. § 72; Armbruster v. Epstein, 1996 U.S. Dist. LEXIS 7459, at *22 (E.D. Pa. May 31, 1996).  However, "it is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress," Cox v. Keystone Carbon Co., 861 F.2d 390, 395 (3d Cir. 1988), and as explained above with respect to the retaliation claim, the Second Amended Complaint does not allege specific, intentional conduct by Green, Dudley, or Outlaw other than a failure to take remedial action and prevent Schwinghammer's behavior.  This alleged failure does not rise to the level of behavior necessary to establish an actionable claim.  See Buczek v. First Nat'l Bank of Mifflintown, 531 A.2d 1122, 1125 (Pa. 1987) ("The conduct must be 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society,' and where the requisite outrageous conduct is not alleged, dismissal of the claim on preliminary objections is appropriate." (quoting Restatement (Second) of Torts § 46 cmt. d (1965))).  Because the Second Amended Complaint fails to allege any potentially extreme or outrageous conduct by Green, Dudley, or Outlaw, the Court normally would dismiss the claim against these Defendants.  However, given the vagueness of the "personal injury" claim, and mindful of the deference to be afforded pro se filings, the Court will grant Plaintiff leave to amend Count XII and clarify Green, Dudley, and Outlaw's conduct within twenty days if she can responsibly do so.  If Plaintiff fails to amend the claim within twenty days, it will be dismissed

with respect to Green, Dudley, and Outlaw.

Finally, with respect to Schwinghammer, Plaintiff has alleged numerous instances of harassment as well as instances of retaliation.  The Pennsylvania Supreme Court has explained that "retaliation is a critical and prominent factor in assessing the outrageousness of an employer's conduct."  Hoy v. Angelone, 720 A.2d 745, 754 (Pa. 1998).  At the Motion to Dismiss stage, all Plaintiff is required to do is provide fair notice of the claim against Schwinghammer, and the Court finds that she has done so.  See Eubanks v. Wegmans Food Mkts., Inc., 2006 U.S. Dist. LEXIS 60828, at *7-8 (M.D. Pa. Aug. 28, 2006) ("Clearly, the applicable case law creates a heavy burden for a Plaintiff seeking to establish an IIED claim in this type of filing. . . . It may well be that discovery will reveal that Plaintiff has not met the yeoman's task he has to preserve his IIED count for a jury's consideration.  But, we believe that justice dictates he be given the opportunity to flesh out this claim.").


## IV.  CONCLUSION

For the reasons given above, Defendants' Motion to Dismiss will be granted in part and denied in part.  An appropriate Order follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **KAREN CLINKSCALES** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 06-3919** |
| | : | |
| **THE CHILDREN'S HOSPITAL OF** | : | |
| **PHILADELPHIA, et al.** | : | |

**ORDER**

**AND NOW**, this 9th day of November, 2007, upon consideration of Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint (docket no. 18), Plaintiff's Second Amended Response thereto (docket no. 23), and Defendants' Reply (docket no. 24), and for the reasons stated in the accompanying Memorandum, it is **ORDERED** that the Motion is **GRANTED** in part and **DENIED** in part. Accordingly, the following claims are **DISMISSED**:

    1. Counts I, II, IV, V, VI, and XIII are **DISMISSED** with respect to Defendants Schwinghammer, Green, Dudley, and Outlaw.

    2. Counts IX and XI are **DISMISSED** in their entirety.

    3. Count XII is **DISMISSED** with respect to Defendant CHOP.

In all other respects, the Motion is **DENIED**.

    **IT IS FURTHER ORDERED** that Plaintiff shall file a Third Amended Complaint consistent with the Court's opinion within 20 days from the date hereof. If Plaintiff fails to file a Third Amended Complaint within 20 days, the following claims will be **DISMISSED**:

    1. Counts III, VII, and XII will be **DISMISSED** with respect to Defendants Green,

-24-

Dudley, and Outlaw.

    2.  Count X will be **DISMISSED** in its entirety.


**BY THE COURT:**

   **/s/ Bruce W. Kauffman**        
   **BRUCE W. KAUFFMAN,  J.**